THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d)

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLENN A. MAGARIAN, | Case No. CV 97-2347-GAF (CWx) |
| Plaintiff, | **ORDER DISMISSING ACTION AND IMPOSING SANCTIONS** |
| v. | |
| MONARCH LIFE INSURANCE COMPANY ET AL, | ENTERED CLERK, U.S. DISTRICT COURT JUL - 7 2000 CENTRAL DISTRICT OF CALIFORNIA |
| Defendants. | |

## I.
## INTRODUCTION AND SUMMARY

The Court has before it a most serious issue: did plaintiff Glenn A. Magarian ("Magarian") tamper with videotapes, which were produced to defendant in discovery, to conceal evidence that would compromise his disability claim in this lawsuit, and, if so, what is the proper sanction to be imposed?[1]

---

[1] On March 7, 2000, the Court issued an order to the plaintiff to show cause why this action should not be dismissed and monetary sanctions awarded. The Court was prompted to issue the order based on evidence that plaintiff had altered certain videotapes prior to their production in discovery, and may have obstructed justice and suborned perjury. The latter concerns were based on the deposition of his ex-fiancee Kiana Tom. Since the Court ultimately concludes that this case should be dismissed based on the tampering with physical evidence produced in discovery, the Court does not reach the question of whether Magarian suborned perjury.

Magarian argues that he did no such thing and that he is being set up by Kiana Tom ("Tom"), a vindictive ex-fiancee pursuing a vendetta against him. The problem with the argument is that the videotapes were altered in such a way as to exclude only those activities of Magarian that undermine his claim, and were altered and produced to the defendants before Magarian and his fiancee became estranged. That Ms. Tom chose not to reveal what she knew of these altered tapes until after being jilted by Magarian is neither surprising nor suspicious. Thus, despite his best efforts to divert this Court's attention from the issue before it, Magarian's smokescreen is too thin to prevent the Court from seeing through it to the truth — Magarian tampered with evidence by altering several videotapes to delete material pertinent to his case, produced them in discovery as if they were complete, and attempted to deceive and mislead both the defendant and the Court. This behavior is deserving of the harshest sanction in the Court's arsenal. For the reasons set forth below, Magarian's case is dismissed with prejudice and sanctions are awarded to defendant Royal Maccabees Life Insurance Company ("Royal").

## II.

## BACKGROUND

### 1. The Case

On February 24, 1997, Magarian filed suit in Superior Court for the State of California in the County of Los Angeles, seeking payments for total disability of $15,000 per month for life. The case was timely removed to this Court. In his complaint, Magarian alleged that on or about August 1, 1995, he made a claim to Royal for disability benefits because of "bilateral carpal ligamentous instability; muscle, ligament, and tendon damage; [and] bilateral carpal tunnel syndrome" dating back to January 24th of that year. (Complaint, ¶ 7)[2] According to the

---

[2] Although the complaint suggests no benefits were ever paid, plaintiff's response to the Order to
(continued...)

2

complaint, this claim was denied on June 1, 1996. (Id., ¶ 8.) Magarian's lawsuit followed.

### 2. The Discovery Request

In April of 1997, Royal requested that Magarian produce, pursuant to Fed. R. Civ. P. 26(a), copies of all videotapes of Magarian's appearances on the ESPN network show "Kiana's Flex Appeal." The show was hosted by Tom, who was then Magarian's fiancee and cohabitant. After a series of oral requests, Royal twice made formal requests for the tapes, once on August 4, 1997, and another on an unspecified date. In October of 1997 — six months after Royal first put Magarian on notice that Royal wanted copies of the tapes — Royal received four videotapes from Magarian. There the matter stood until 1999 when defendant became suspicious that the tapes had been altered or otherwise incomplete. Hence, Royal's counsel issued a subpoena to ESPN in March 1999 for all videotapes of Kiana's Flex Appeal episodes.

ESPN moved to quash the subpoena, bolstered by a letter from Magarian's counsel stating that Royal already had the tapes in their possession. ESPN used that representation as evidence in support of its motion. The struggle over the tapes, which extended over an eight-month period, ended with the agreement that ESPN would produce 35 tapes at a cost to Royal of $5000. The tapes were received on November 19, 1999.

### 3. The Alterations to the Tapes

After the ESPN tapes had been obtained, they were compared with the tapes Magarian had produced in 1997. An expert was retained to make the comparison and to render an opinion as to whether the tapes Magarian produced had been edited. The expert found that the 1997 tapes showed evidence of

---

²(...continued)
Show Cause states that Royal ceased paying benefits because he could perform administrative functions and was therefore not disabled, including reference to partial payments of $7,500 per month (Response to OSC, pg. 10).

editing and that this conclusion was confirmed by the comparison of the ESPN tapes with the Magarian tapes. The comparison revealed that the following material had been cut from the versions produced by Magarian:

1. ESPN Show #96032: Material showing Magarian doing "french presses," "side raises" "curls," and "tricep kickbacks" with weights, as well as doing "tricep dips."

2. ESPN Show #96035: Material showing Magarian doing a seated "military press" and doing "inline curls," seated "military press," and "front raises."

3. ESPN Show #96037: Material showing a boxing segment in which Magarian has his wrists taped and is holding boxing pads for a boxer.

4. ESPN show #96046: Material showing Magarian doing "dumbell," "preacher," and "cable" curls with significant weight.[1]

### 4. Tom's Videotapes

In connection with Tom's renewed deposition, Tom produced her copies of videotapes of her shows. A comparison of her tapes, ESPN's tapes and Magarian's tapes revealed that each of them produced copies of shows designated by the following numbers: 96032, 96035, 96037, 96040, and 96046. Like the ESPN versions of the tapes, Tom's copies contain material showing Magarian performing exercises, and engaged in activities, that put his wrists in an extreme range of motion. **Thus, only those tapes produced by Magarian had been edited to excise those materials.**

Once a review of the tapes unequivocally established that the Magarian produced tapes had been edited, Magarian was forced to concede that the noted differences exist. Magarian addresses this fact by characterizing the videotapes he produced as "very amateurishly edited," apparently being of the view that this point is somehow exculpatory. Magarian argues that the edits were not made by him and must have been made by Ms. Tom, perhaps with defense counsel in

4

cahoots.[3] For reasons explained below, the Court finds this contention unworthy of belief.

### III.
### ANALYSIS

**1. The Court's Power to Sanction**

The Federal Rules of Civil Procedure authorize the imposition of a wide variety of sanctions for discovery abuses, establishing the principle that the more serious the discovery violation, the more severely the Court may sanction the wrongdoer. These sanction can include dismissal of the lawsuit. Sigliano v. Mendoza, 642 F.2d 309, 310 (9th Cir. 1981) ("This court has specifically encouraged dismissal, however, where the district court determines 'that counsel or a party has acted willfully or in bad faith in failing to comply with rules of discovery or with court orders enforcing the rules or in flagrant disregard of those rules or orders.'"); Anheuser Busch, Inc., v. Natural Beverage Distributors, 69 F.3d 337, 348 (9th Cir. 1995) (affirms sanction of dismissal of counterclaim for false denial of existence of documents). Dismissal is particularly appropriate in cases where the sanctioned party's misconduct relates to a material matter in issue such that the misconduct would "undermine the integrity of the judicial proceedings." Anheuser, 69 F.3d at 348; Wyle v. R.J. Reynolds Ind., Inc., 709 F.2d 585, 589 (9th Cir. 1983) (affirming dismissal where plaintiff made knowingly false denials of material facts).

Discovery abuses involving destruction of evidence are viewed as particularly serious. Computer Associates Int'l. Inc. v. American Fundware, Inc.

---

[3] The Court finds it noteworthy that, in his sworn declarations, Magarian never expressly denies editing the tapes. Decls. of Magarian, filed 3/29/00 and 4/17/00. Rather, his "denials" — if denials they be — are in the form of rhetorical questions to the following effect: why would I edit out these portions of the tapes when I testified in deposition that I lift weights and have done some of these exercises? From the Court's perspective, a picture is much more valuable as evidence because it is unadulterated by any testimonial "spin." It is quite apparent that Mr. Magarian is smart enough to understand this proposition.

133 F.R.D. 166 (D CO 1990) (dismissal sanction for destruction of source code, although the practice in industry, where it was known that the code would be sought as evidence). The Ninth Circuit supports dismissal where a party has deceived the court and that deception has shaped the opposing party's case strategy, <u>Televideo Systems, Inc., v. Heidenthal</u>, 826 F.2d 915, 916 (9th Cir. 1987) (admitted perjury in deposition).

### *2. The Significance of the Alterations*

Magarian does not dispute that the only purpose of the alteration of the videotapes would be to conceal the fact that he was performing certain exercises, involving stressing his wrist, rolling it, or taking it through a range of motion while bearing significant weight. There are a number of examples. The videotapes show Magarian performing tricep dips in which he hangs between two benches with his wrists bent behind him, supporting all his bodyweight. Likewise, in other exercises such as the curls and the presses, Magarian is seen lifting significant amounts of weight, showing flexion in his wrists, which are under obvious strain. Since Magarian is a very fit, heavily muscled individual, these demonstrations of physical strength involving the use of his arms and wrists present at least a facial conflict with Magarian's testimony that he is totally disabled from performing his duties as a chiropractor.

In his deposition, Magarian characterized his "micro-trauma" injury as disabling. He testified to its limiting effect on his life, noting even such acts as closing a car trunk or pushing a heavy box gives him sharp pain (Hines Decl., Ex. D). Magarian also testified that "I found just during the activities of daily living, something where I, I pick up, I pick something up, and my wrist moves the wrong way, and it goes into a, into extreme range of motion, it will give me a sharp pain in my wrist." (Hines Decl., Ex. D). And further, "Hammering would give me pain (indicating) trying to hammer something." (Id.) Such claims are facially inconsistent with his weightlifting. Videotapes showing the lifting of heavy

weights in exercises where there is significant flexion in the wrists compromise his claims and seriously undermine his credibility.

### 3. *Magarian Had A Motive To Conceal The Videotapes*

Despite an obvious motive to conceal material damaging to his claim, Magarian argues that he had no motive to edit the tapes in issue. Although he states that he is not arguing "that the editing of the tapes is of no consequence," (Response to OSC, pg. 4) he states he had absolutely no reason to prevent defendant from seeing the tapes in full. In support of this claim, Magarian points out that he admitted in his deposition that he engaged regularly in weight-lifting activities, including some of the exercises depicted on the video tapes. However, the Court notes that Magarian testified in deposition that his exercises were performed in such a way so as not to cause him pain or injury. For example, he stated in deposition that he would "keep a static grip, meaning [a] nonmoving wrist grip" while lifting weights (Hines Decl., Ex. A) Referring to his weightlifting, he said "[n]one of this puts my wrists in an extreme range of motion" (Hines Decl., Ex. B).[4]

In fact, the videotapes, which are not subject to plaintiff's testimonial "spin," show his wrists in an extreme range of motion in a number of the exercises. Moreover, they reveal Magarian performing one exercise — tricep dips— that he admits not having disclosed in deposition testimony. Now the Court is told that Magarian did not mention them because they are not part of his

---

[4] The Court notes that Ms. Tom was obviously coached on Magarian's disability theory as reflected in her voluntary comments during her original deposition, which was taken before she and the plaintiff became estranged. For example, when asked about a kick-boxing demonstration where Magarian was holding pads that she was kicking, she stated:

> Q: So he's holding the pads that you were kicking?
> A: No. That I was jabbing.
> Q: He was providing resistance with the pads, is that right, or a target for you to hit?
> A: **With his wrists firm**, yes.

(April 17, 2000 Declaration of Glenn A. Magarian, Exh. B) (Emphasis added)

7

regular workout. He states that he only did them on the tape because "I was asked to do so." But to preserve his position that he suffers a disability, he asserts that even though "that exercise does not require complete extension of the wrist, it hurt to do it, and I stopped."[5] (Magarian 4/17/200 Declaration, pg. 3, ¶ 10) On that line of reasoning, Magarian concludes that any attempt by him to alter the tapes would be "stupid and unnecessary" because of his prior deposition testimony. (Id., pg. 1, ¶ 2).

Whether or not spoliation is necessary to prevail in a suit is immaterial to the fact that it has taken place. Even if Magarian is right that a jury could be made to understand that there is no contradiction between his impressive weightlifting feats and his disability claim, the tapes are clearly a hurdle that he would have to overcome to prevail at trial. Thus, the Court does not accept Magarian's assurance that he had no motivation to alter the tapes because it is clear that on the surface that, at the very least, the content of the tapes strongly suggests that Magarian's disability claim is a fraud. Simply put, Magarian is not believable when he claims that he had no motive to alter the tapes. The edited portions of the tapes show him performing exercises that appear clearly inconsistent with his claims in deposition that his wrist injury is virtually debilitating and, in fact, disabling to him as a chiropractor.

**4. Magarian's Conspiracy Theory**

If Magarian had no motive to alter the videotapes, then the question is, who did? Magarian points to defense counsel and Ms. Tom, his estranged fiancee. Magarian asserts that Ms. Tom is acting to destroy his case because she is enraged and bitter over their break-up, which has been exacerbated by the fact that Magarian took another woman on a Valentine's Day trip he had planned with Tom and that Magarian's new girlfriend prevented Tom from using the home she

---

[5] Evaluation of the level of pain shown by Magarian during the performance of this exercise, which he admits was barred to him by his disabling injury, would be a highly significant action for a jury.

bought with Magarian for an appearance on the "E" Channel's "Celebrity Home Interview." Magarian argues that the timing of these events with others connected to the case is so suspicious that the more probable conclusion is that Tom altered the tapes, rather than Magarian.[6]

The theory is rather elaborate, but it hinges on his contention that Tom, knowing that "a few of the tapes she provided to Magarian might have contained pre-production edits," contacted defendants in February of 1999 to tell them that, if copies of the tapes could be obtained from ESPN, discrepancies might exist. What this argument ignores is that whatever differences existed between the ESPN and Tom versions of the tapes would have nothing to do with the deletions at issue here. The only versions of the recordings that contain deletions of Magarian's weight lifting activities are the versions Magarian produced in discovery. Moreover, as noted above, the tapes produced in discovery were produced years before Tom and Magarian became estranged. And with respect to those tapes, Magarian submitted a declaration in opposition to a motion for summary judgment where he stated that he asked Tom for the tapes, she gave them to him, and he had them copied through a copying service. Declaration of Glenn Magarian, filed 1/18/2000, ¶ 7; Declaration of Thomas Stolpman, filed 1/18/00, ¶ 7. Unless a professional copying service created amateurishly edited copies of the tapes, it would appear that that declaration is false. Since it is

---

[6] At the hearing on these issues, the Court suggested that Magarian also has a motive to fabricate since he is claiming a right to $15,000 a month, perhaps for the rest of his life, in this lawsuit. Counsel responded by arguing that it was a small fraction of the alleged $1 million per year that Magarian was earning as a chiropractor, although no evidence was cited in support of that proposition. (The Court notes that the disability application prepared by Magarian and attached to his complaint shows substantial income but far below $1 million per year). As to Magarian's motive, the Court has coincidentally come upon information that bears on this issue. A year before this case was filed, Magarian filed suit in another action entitled Magarian v. National Financial, et al., CV 96-314-LHM. That file reveals that in 1994, before claiming disability, Magarian sold thousands of receivables to one or more of the defendants. The file further reflects that a dispute arose over representations made concerning those receivables which lead to an arbitration and the federal court action. It was not until January 1995, after the sale of receivables and the resulting dispute, that Magarian submitted his claim for disability.

beyond dispute that Magarian was living with Tom when the request was made of him for the tapes, he knew where they were kept, and there was a side-by-side videocassette recorder which he could have used to copy the tapes, it is quite clear that Magarian either edited, or caused the editing, of the relevant videotapes.

## IV

## CONCLUSION

Magarian had the motive, the means, and the opportunity to alter the videotapes that were produced in discovery, and the Court concludes that he did just that. Given the timing of their production and the nature of the edits, no one, other than Magarian or someone working at his behest, would have had any interest in eliminating the segments depicting him engaging in the weightlifting exercises discussed above. Moreover, the purpose of the edits is likewise clear: Magarian hoped to mislead the defendant and the Court to materially advance his disability claim. As noted above, the Court views such conduct as intolerable and deserving of the harshest sanction available. Accordingly, this matter is **dismissed with prejudice.** As a result of the plaintiff's misconduct, the Court will consider an award of attorney's fees to defendant. Any motion for such fees must be filed no later than 20 days following entry of this order.

**IT IS SO ORDERED.**

DATED: July 5, 2000

Judge Gary Allen Feess
United States District Court